# IN THE COURT OF APPEALS OF IOWA

No. 19-1092
Filed January 21, 2021


**MATHEW EUGENE FISHER,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.


The applicant appeals the denial of his application for postconviction relief; we must determine if we have jurisdiction to decide his appeal before proceeding to the merits of his claims. **AFFIRMED.**


Patrick W. O'Bryan, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee State.


Considered by Tabor, P.J., Schumacher, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**POTTERFIELD, Senior Judge.**

In 2014, Matthew Fisher pled guilty to five charges (over three different cases) in a single plea proceeding.[1]  Based on a joint recommendation from the State and Fisher's trial counsel, Fisher was given a suspended forty-five year prison sentence and sent to drug treatment as part of his probation.  Fisher eventually absconded from the drug-treatment facility, and in 2015, his original prison sentence was imposed.

Fisher filed an application for postconviction relief (PCR).  He alleged he received ineffective assistance from trial counsel because counsel allowed him to plead guilty without ensuring he was competent to do so.  He also claimed he was actually innocent of the second-degree theft he pled guilty to in FECR279054.

Following a hearing, the district court filed a written ruling denying Fisher's PCR application on June 19, 2019.

On June 28, Fisher filed an informational copy of a notice of appeal with the clerk of our supreme court.  Our supreme court filed an order almost one month later, on July 26, which stated:

> Upon review of the district court's docket it appears the appellant did not file the notice of appeal with the district court within 30 days of the entry of the challenged order.  *See* Iowa Rs. App. P. 6.101(1)(b) (requiring a notice of appeal to be filed within 30 days of the final order or judgment), 6.102(2) (stating an appeal "is taken by filing a notice of appeal with the clerk of the district court . . . within the time provided in rule 6.101(1)(b)").  Consequently, this court may not have jurisdiction over this appeal.
> Within fourteen days of the date of this order, the appellant shall file with this court a statement addressing whether this court

---

[1] Fisher pled guilty to eluding (FECR276910); theft in the first degree and theft in the second degree (FECR278523); and theft in the second degree and criminal mischief in the second degree (FECR279054).  All five charges included the habitual-offender enhancement.

has jurisdiction to hear the appeal. The appellee may respond to the statement within fourteen days of his filing.

At the end of September, our supreme court filed an additional order, stating in part:

> On August 5, 2019 appellant's counsel filed a statement. On August 12, 2019 he supplemented that statement and included appellant's affidavit indicating he mailed a notice of appeal to the clerk of the district court at the same time he mailed the informational copy to the clerk of this court. The State did not file a statement or response. A review of the district court docket reveals a notice of appeal has never been filed.

The supreme court ordered "the issue of whether the court has jurisdiction shall be submitted with the appeal. The parties shall brief the issue whether the court should grant appellant a delayed appeal." It later transferred the case to us.

**I. Delayed Appeal.** "The time limitations for the filing of notice of appeal to this court are jurisdictional in both civil [and] criminal cases." *Swanson v. State*, 406 N.W.2d 792, 792 (Iowa 1987). Ordinarily failure to timely file notice of appeal deprives us of appellate jurisdiction, and we are duty bound to dismiss an untimely appeal. *See, e.g.*, *Robco Transp., Inc. v. Ritter*, 356 N.W.2d 497, 498 (Iowa 1984). However, the supreme court recognizes an inherent authority to grant delayed appeals in "those instances where a valid due process argument might be advanced should the right of appeal be denied." *Swanson*, 406 N.W.2d at 793. Whether a delayed appeal should be granted depends upon the circumstances of the case. *State v. Anderson*, 308 N.W.2d 42, 46 (Iowa 1981).

In an affidavit filed in August 2019, Fisher attested that he mailed notices of appeal to our supreme court and the district court at the same time—in late June 2019. Accepting this as true, Fisher timely mailed his notice of appeal to the district

court and "other circumstances beyond [his] control have frustrated an intention to appeal." *Swanson*, 406 N.W.2d at 792–93. For this reason, we grant Fisher's delayed appeal and proceed to the merits of his claim.

**II. Ineffective Assistance.** As he did to the district court, Fisher claims his trial counsel denied him effective assistance by allowing him to plead guilty without ensuring he was competent to enter the pleas. *See State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018) ("[T]he conviction of an incompetent defendant violates due process."). When an applicant brings a claim of ineffective assistance, the burden is on the applicant to prove (1) counsel breached an essential duty by performing below the standard of a reasonably competent attorney and (2) prejudice resulted. *See Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012). The critical questions about a defendant's competency are whether the defendant had the ability to (1) appreciate the charges, (2) understand the proceedings, and (3) assist effectively in their defense. *State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993).

The record in this case is not diminutive. The files from the three underlying cases combine for more than 1200 pages, and Fisher offered into evidence more than 400 pages of medical records at the PCR hearing (among other things). That being said, Fisher does not point to any evidence in the record that supports his claim he was incompetent at the time of his guilty pleas. Nor does he reference evidence from the record before us to show that a reasonable attorney would have realized Fisher needed to be evaluated for competency before the plea proceedings. *See id.* (listing factors to consider when determining whether the defendant should be evaluated for competency); *see also State v. Rieke*, 542 N.W.2d 577, 580 (Iowa Ct. App. 1995) ("A strong presumption exists that a

defendant is competent to stand trial.")  His argument on appeal is limited to the following:

> Mr. Fisher would submit that based on the record at the time he entered into his guilty plea his attorney should have taken the extra precaution to have a trained professional examine his competency to stand trial or to enter a guilty plea before allowing him to proceed with his guilty plea.  In short, the [d]efendant suffered from such a grave mental impairment because he was not allowed to take his medications while in the Polk County jail, he was not competent to either stand trial or to enter into a guilty plea.  It was error for the postconviction court to rule otherwise.

"Our appellate rules of procedure and judicial restraint expect claims raised on appeal be specific."  *Goode v. State*, 920 N.W.2d 520, 524 (Iowa 2018).  As we have said many times before, we will not take it upon ourselves to comb the record for facts to support an appellant's argument.[2]  *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996).

Fisher's failure to include citations to the record waives any alleged error in the PCR court's determination he failed to prove his claim of ineffective assistance.  *See Goode*, 920 N.W.2d at 524; *see also* Iowa R. App. P. 6.903(2)(g)(3) (requiring the argument section of an appellant's brief to include "[a]n argument containing the appellant's contentions and the reasons for them with citations to the authorities relied on and *references to the pertinent parts of the record*" (emphasis added)).

---

[2] We acknowledge that Fisher's "statement of facts" section in his appellate brief includes a citation to the record for where we can find Fisher's testimony at the PCR hearing that he has been diagnosed with "bipolar [disorder], schizophrenia, psychotic, manic depression."  "A history of mental illness standing alone, however, does not mean the defendant is incompetent." *Edwards*, 507 N.W.2d at 395.

**III. Actual Innocence.** Fisher maintains he is actually innocent of one of the five charges to which he pled guilty. In order to succeed on his claim, Fisher "must meet the demanding actual-innocence standard to prove the validity of [his or her] actual-innocence claims." *Dewberry v. State*, 941 N.W.2d 1, 5 (Iowa 2019) (alteration in original) (quoting *Schmidt v. State*, 909 N.W.2d 778, 793 (Iowa 2018)). To do so, he "must show 'by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant.'" *Id.* at 5 (citation omitted).

At the PCR hearing, Fisher introduced into evidence a signed affidavit from Brendan McGuinness claiming he was the person who actually stole the vehicle, for which Fisher pled guilty to second-degree theft in FECR279054. McGuinness's affidavit was typed by a third party and states:

> I Brendan McGuinness while high on drugs stole a Dodge Durango from the Family Dollar Store on East University in Des Moines, Iowa on July 13, 2014. I was chased by a man in another car. I crashed the Durango into a fence behind Titan Tire. I tried stealing the other vehicle that was chasing me but was stopped by the man who was chasing me. I then ran off to my friends house to get a ride out of the area.
> I know a man is in prison because of my actions. This weighs heavy on my conscience. I take full responsibilities for my actions.

Like the district court, we are skeptical of this affidavit. At the time McGuiness signed it, he was serving a life sentence without the opportunity for parole following a conviction for first-degree murder, so he had little to lose by claiming he was the person who stole the vehicle. Additionally, when he was deposed as part of Fisher's PCR proceedings, McGuiness was unable or unwilling to discuss the underlying incident. The following exchange took place between the State and McGuinness:

> Q. All right. Can you tell us about what it was that you did that you detailed on your affidavit? A. No, I can't. I don't have that in front of me.
>
> Q. Do you remember the events that you were talking about, though? A. On the advice of counsel, I'm unwilling to say anything beyond the fact that I did write the affidavit. It's the truth. I have nothing to add to it or subtract from it.
>
> Q. All right. So do I take it you're pleading the Fifth on this then? A. Yes.
>
> Q. Okay. You don't want to comment on the specifics that you talked about in your affidavit? A. No.

"To be credible, such [an actual-innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). McGuinness's affidavit, standing alone, does not constitute reliable evidence that convinces us no reasonable factfinder could convict Fisher of the theft. During the plea proceedings, Fisher told the court he was the person who stole the vehicle, and the minutes of evidence state that witnesses identified Fisher as the actor. We agree with the district court that Fisher failed to meet the demanding actual-innocence standard for this claim.

Because Fisher failed to prove his claim of ineffective assistance of trial counsel and his claim of actual innocence, we affirm the district court's denial of his PCR application.

**AFFIRMED.**