# IN THE COURT OF APPEALS OF IOWA

No. 24-0448
Filed April 23, 2025

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**SHERICA TANYA SMILEY,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Hancock County, Karen Kaufman Salic, Judge.

　　　A defendant appeals her convictions and sentence for possession of methamphetamine and possession of cannabis. **CONVICTIONS AFFIRMED; SENTENCE VACATED IN PART AND REMANDED.**

　　　Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

　　　Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.

　　　Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

A jury convicted Sherica Smiley of two counts of drug possession after officers found two tablets that tested positive for methamphetamine and one cannabis vape cartridge inside her vehicle. Smiley appeals her convictions, challenging the use of her prior misdemeanor conviction during trial, the sufficiency of the evidence, the district court's denial of her motion for new trial, and the district court's imposition of a $430 fine on her possession-of-cannabis conviction.

## I.      Background Facts and Proceedings

On the evening of February 14, 2022, Smiley and her partner got into a dispute that ended with Smiley leaving the home where Smiley had been residing with her partner. Smiley got in her vehicle and began driving north with the intent of staying with a friend for a while.

On the same stretch of highway, Officer Gerdes drove south. Smiley's vehicle approached Officer Gerdes's vehicle. Smiley was traveling at thirty-five miles per hour, twenty miles per hour below the speed limit. And about a third of Smiley's vehicle was over the center line. Maneuvering to avoid a collision, Officer Gerdes drove onto the highway's shoulder. He then turned around and initiated a traffic stop.

Smiley generally cooperated with Officer Gerdes during the stop. She provided identification, although she did not have a driver's license. She did not try to conceal her lack of current registration or insurance. She performed three field sobriety tests, which did not lead Officer Gerdes to conclude she was driving impaired. And when a K-9 unit arrived, she did not object to a drug-dog sniff of the vehicle's exterior. The officer of the K-9 unit, Officer Klein, testified at trial, "She

was very pleasant throughout the whole investigation and was very easy to deal with and very nice." After the drug dog signaled the presence of contraband and Officer Klein began a search of the vehicle's interior, Smiley gave consent to Officer Gerdes to search a lockbox found within the vehicle.

Officer Gerdes stayed with Smiley, and Officer Klein continued to search the vehicle. On the center console, Officer Klein noticed seeds and stems from what appeared to be marijuana use. In the center console area, Officer Klein discovered a small plastic baggie with a panda-bear pattern printed on it. The baggie contained two different-colored tablets. Later lab testing confirmed the tablets contained methamphetamine. Tucked between the center console and the front passenger seat, Officer Klein found a package labeled "cannabis concentrate" that contained what appeared to be a commercially produced cannabis vape cartridge.

Although Smiley was the vehicle's sole occupant and the registered owner, she denied either item belonged to her. She also denied knowing either was in her vehicle. And she asked that the objects be tested for fingerprints, which was never done.

The State charged Smiley with one count of possession of methamphetamine and one count of possession of cannabis, both in violation of Iowa Code section 124.401(5) (2023), each a serious misdemeanor. The charges were tried by jury.

At trial, an issue arose about the admissibility of Smiley's prior misdemeanor conviction. The following exchange occurred on Smiley's cross-examination:

> Q: Did you also tell the officers that you don't do drugs? A: I told them that they weren't my drugs and that they can test me if they needed to, I'm willing to take a test.
>
> Q: But did you also tell the officers that you don't have any history of drug use? A: No. They didn't ask me that at that time, but, I mean, I could have.
>
> Q: And isn't it true that you actually do have some—

At this point, defense counsel objected, asserting "this is irrelevant and would be a prior bad act." The district court and the parties then discussed the objection outside the jury's presence. The district court also allowed Smiley to consult privately with defense counsel.

The district court and the parties continued their discussion outside the presence of the jury:

> [DEFENSE COUNSEL]: Your Honor, my client at this time would not be acknowledging that she has a prior drug conviction that she's aware of, and I believe that to continue down this would be a collateral matter as to whether or not she does or does not.
> . . . .
> [STATE]: Your Honor, I do have the client's criminal history and it clearly indicates she does have a prior conviction from Polk County from 2021.
>
> COURT: Our problem is going to be . . . if [Smiley] denies it, I'm going to have to at least allow some inquiry in it, . . . . If we get to a point where she will say that she was not honest with the officers about her history, we can let it go at that, but if she's going to say she didn't say that, she wasn't convicted of it, . . . I'm going to have to let the State probably try to impeach her on that.

After again consulting privately with Smiley, defense counsel reported that "[Smiley] would acknowledge that she did not tell law enforcement that she had a prior drug conviction, . . . and we would be willing to stipulate that on the record." The district court then suggested a limiting instruction, and a brief conversation occurred off the record. When the record continued, the district court stated it had reviewed "with counsel" the proposed stipulation and limiting instruction.

The jury returned, and the district court read the following stipulation to the jury:

> [T]he parties are stipulating that defendant told law enforcement that she did not have a drug history. However, she does have a conviction for Possession of Drug Paraphernalia in 2021. You may consider the prior conviction only for the purpose of determining whether you believe her testimony at trial today. You may not conclude that she is guilty of the charges in this case because of the prior drug paraphernalia conviction.

Defense counsel did not object to the stipulation as read by the court.

The jury convicted Smiley on both counts, and Smiley moved for new trial. She argued the jury's verdict was against the weight of the evidence. The district court denied Smiley's motion. For each count, the district court imposed a sentence of thirty days of incarceration, with a portion suspended, and a $430 fine with a fifteen percent surcharge.

Smiley appeals. She challenges the use of her prior conviction at trial, the sufficiency of the evidence to convict, the denial of her motion for new trial, and the fines imposed.

## II.     Error Preservation

The State disputes error was preserved on Smiley's challenge to the use of her prior misdemeanor conviction to impeach, arguing Smiley's agreement to the stipulation waived her initial objection and absolved the district court of the need to make a final ruling on admissibility. Smiley responds that the district court issued a final admissibility ruling before she agreed to the stipulation. She contends the stipulation was therefore not a waiver because it was only offered as a tactical decision—a means of mitigating the prejudice that would result from the court's "erroneous" admissibility ruling.

"The preservation of error doctrine is grounded in the idea that a specific objection to the admission of evidence be made known, and the trial court be given an opportunity to pass upon the objection and correct any error." *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003). "[A]n objection, once made and overruled, need not be asserted repeatedly to the same type of evidence" to preserve error. *State v. Schmidt*, 312 N.W.2d 517, 518 (Iowa 1981).

But "[a]fter a party objects, a 'subsequent affirmative act amounting to an express or implied assent to the reception of the evidence' waives that objection." *State v. Spiker*, No. 19-1957, 2021 WL 377120, at *5 (Iowa Ct. App. Feb. 3, 2021) (quoting *Schmidt*, 312 N.W.2d at 518). Although "[g]enerally, a stipulation to the admission of testimony at trial constitutes a waiver of any objection to the testimony raised prior to trial," the ultimate issue is whether "the spirit of [our error preservation] rule was met." *Brown*, 656 N.W.2d at 360–61.

Smiley offered the stipulation after a short exchange with the district court. Defense counsel reported Smiley "would not be acknowledging that she has a prior drug conviction that she's aware of." The district court responded, "if she denies it, I'm going to have to at least allow some inquiry in it," and "if she's going to say she didn't say that, . . . I'm going to have to let the State probably try to impeach her on that." Defense counsel then conferred with Smiley and—without further discussion—affirmatively acted by offering the stipulation.

*State v. Spiker* provides guidance in how this court has previously considered the error preservation issue where the State offered and the defendant agreed to a stipulation after the defendant objected to evidence at trial. *See* 2021 WL 377120, at *5 (finding error unpreserved). Smiley tries to distinguish her case

from *Spiker* by arguing that, unlike here, the stipulation in *Spiker* was helpful to the defendant. *Id.* ("Not only did Spiker's trial counsel consent to admission of the rape-kit evidence, he also relied on the evidence in closing argument."). But under the present circumstances, this is a distinction without a difference. The stipulation was offered by Smiley, not the State. The district court asked whether the parties found the stipulation as read to the jury acceptable, and defense counsel responded, "Yes, Your Honor." In her appellate briefing, Smiley concedes the stipulation was a tactical trial maneuver. Although Smiley argues she offered the stipulation only because the court indicated it would permit questioning, the fact remains: the strategic stipulation resolved the evidentiary issue Smiley now raises on appeal. *See id.* (affirming the district court's denial of Spiker's motion to continue because the stipulation, which the parties agreed to before the court ruled on Spiker's motion, "resolved the issues Spiker now raises on appeal").

Because the stipulation resolved the issue, the district court had no further opportunity to expand on its reasoning or clarify the specifics of its initial determination. *Cf. id.*

We note that in *State v. Brown*, the parties entered a stipulation after the defendant's objection at trial, and yet the Iowa Supreme Court held error was preserved. *See* 656 N.W.2d at 360–61. That said, unlike in *Brown*, this record contains no pretrial objections to the evidence and does not reveal an understanding by the parties or the court that the in-court objection and minimal exchange "would be sufficient to preserve the issue." *Id.* at 361. And nowhere in the record does the district court, after accepting Smiley's stipulation, express a further "understanding that [Smiley] was not waiving [her] 'right to argue' on appeal

that the objectionable [prior conviction] should have been excluded." *Id.* Considering the totality of the circumstances, we determine *Brown* is distinguishable.[1]

In short, we cannot conclude the spirit of our error preservation rule has been met. So we affirm the district court's reading of the parties' agreed-to stipulation without reaching the merits of Smiley's challenge on the issue.

## III. Sufficiency of the Evidence

## A. Standard of Review

We review challenges to sufficiency of the evidence for correction of legal error. *See State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). A jury verdict is binding on appeal "if the verdict is supported by substantial evidence. Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (internal citations omitted). "We consider all of the evidence in the light most favorable to the verdict, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the evidence in the record." *State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020).

## B. Analysis

To convict Smiley for possession of methamphetamine, the jury was instructed the State had to prove (1) Smiley "knowingly or intentionally possessed methamphetamine," and (2) Smiley "knew that the substance she possessed was methamphetamine." Similarly, a conviction for possession of cannabis required

---

[1] Smiley did not cite *Brown*, 656 N.W.2d at 355, in her briefing. Indeed, she cited no case affirmatively supporting her position that the stipulation did not waive her objection and therefore any error preservation effect it may have had.

the State prove both elements as they relate to cannabis. Smiley's challenge focuses on the possession element without presenting argument to challenge the second element of knowledge. We limit our review accordingly. *See* Iowa R. App. P. 6.903(2)(a)(8)(3).

The parties agree this is a constructive possession case. The jury was instructed that a conviction on a theory of constructive possession required proof Smiley had "both the power and the intention at a given time to exercise dominion or control over [the substance], either directly or through another person," and "[a] person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing."

Several factors are used to determine whether a defendant had constructive possession of contraband discovered within a vehicle,[2] including:

> (1) incriminating statements made by the person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; . . . (4) any other circumstances linking the person to the controlled substance. . . .([5]) was the contraband in plain view; ([6]) was it with the person's personal effects; ([7]) was it found on the same side of the car or immediately next to the person; ([8]) was the person the owner of the vehicle; and ([9]) was there suspicious activity by the person.

*Dewitt*, 811 N.W.2d at 475 (quoting *State v. Maxwell*, 743 N.W.2d 185, 194 (Iowa 2008)).

These factors are guideposts, and the list does not exclude consideration of other relevant factors on a case-specific basis. *Id.* "However, any relevant facts

---

[2] Factors one through four generally apply to all constructive possession cases, while factors five through nine apply when contraband was found within a vehicle. *State v. Dewitt*, 811 N.W.2d 460, 475 (Iowa 2012).

and circumstances that are considered in addition to the specific factors, whether it is circumstantial or direct evidence of the crime, must be sufficient to raise a fair inference of guilt." *Id.* Conviction requires "more than suspicion, speculation, or conjecture." *Id.*; *State v. Hamilton*, 309 N.W.2d 471, 479 (Iowa 1981).

Factors one through five are either neutral or weigh in favor of Smiley. Specifically, as to factors one and two, Smiley made no incriminating statements and took no incriminating actions at any point after Officer Gerdes initiated the stop, including after Officer Klein discovered the tablets and vape cartridge. Rather, Smiley agreed to the field sobriety test, consented to the lock-box search, denied the tablets and vaper cartridge were hers, and asked that the items be fingerprinted. Because the items were never fingerprinted, there is no evidence of Smiley's fingerprints being on the items—factor three. No party specifically addresses factor four. On the fifth factor, neither object was found in plain view. The tablets were inside the center console, which had a lid on it and was packed full of assorted objects. The vape cartridge package was "wedged down" in the area between the center console and the front passenger seat, which "almost touches the center console," such that Officer Klein testified he had to take the vape cartridge package out to confirm that it contained cannabis.

The remaining factors are less favorable to Smiley's appeal. On factor six, the items were found among many of Smiley's personal belongings, as Smiley kept her and her kids' effects in the vehicle in case she got kicked out of the place she was staying. On factor seven, the tablets in the center console were in the spot immediately next to the driver's seat. And though the package was shoved between the console and seat on passenger's side, not Smiley's driver's side,

Officer Klein testified the package was "very easily" within a driver's reach. Turning to the eighth factor, Officer Gerdes testified Smiley was the vehicle's registered owner.[3] And lastly, on factor nine about whether a defendant acted suspiciously, Officer Klein testified he found it "odd" Smiley stood in front of Officer Gerdes's patrol car while he performed the drug-dog sniff of her vehicle. He explained, "it was damp and cold out that night" and Smiley had the option to sit with Officer Gerdes inside his vehicle instead.

In her defense, Smiley presented evidence of an alternative explanation for the presence of the drugs in her vehicle: they could have belonged to her partner's teenage nephew and his girlfriend. Smiley testified she shared the vehicle with her partner and the nephew. She stated the nephew had driven the vehicle just the night before. And the fact that the contraband was not coated in the grime that covered most of the vehicle's remaining contents supports the inference that the contraband had only been recently stashed away—but this fact could implicate Smiley as easily as it could implicate any other recent occupant. Smiley also said that when she and her partner got into the argument that night, Smiley left without having planned on it and without telling the nephew she was leaving. But despite Smiley's "alternative explanation for the evidence, 'the jury was not required to accept the defendant's version of the events.'" *State v. Jones*, 967 N.W.2d 336,

---

[3] Smiley testified she owned the vehicle with her son and the registration should have been in both names. But no other evidence was admitted supporting this claim. It is "the very function of the jury is to sort out the evidence" and make credibility determinations when testimony conflicts. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).

343 (Iowa 2021) (cleaned up) (quoting *State v. Helm*, 504 N.W.2d 142, 146 (Iowa Ct. App. 1993)).

Viewing the evidence in the light most favorable to the State, the record contains sufficient evidence to support the jury's verdicts on both convictions. "It is not for us to interfere with the finding made when supported by substantial evidence, even though the evidence may have also supported a finding favorable to the defendant." *Id.* (cleaned up) (quoting *State v. Keeton*, 710 N.W.2d 531, 535 (Iowa 2006)). Smiley was the owner, driver, and only occupant of the vehicle when she was pulled over. The drugs were found in an area "very easily" within her reach. And the cleanliness of the packages in comparison to the rest of the vehicle suggest recent placement, which would be consistent with Smiley attempting to hide the packages when she got pulled over.

The totality of the circumstances presents sufficient evidence to "raise[] a 'fair inference of guilt' and generate[] 'more than suspicion, speculation, or conjecture.'" *Id.* at 343–44 (quoting *Dewitt*, 811 N.W.2d at 475). We are therefore bound by the jury's verdict.

## IV.     Motion for New Trial

Appellate courts generally apply an abuse-of-discretion standard of review to challenged rulings on a motion for new trial when the basis for the motion asserted the verdict is contrary to the weight of the evidence. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). When an appellant claims the district court applied an improper standard in ruling on the motion, we review for legal error. *Id.*

Smiley claims the district court applied the wrong standard in ruling on her motion for new trial. She asserts the district court improperly applied the

sufficiency-of-the-evidence standard instead of the weight-of-the-evidence standard. Immediately after the district court ruled on Smiley's motion, the court asked defense counsel, "Any other record that you would like to make on that?" Defense counsel responded, "No, Your Honor." At no point before this appeal did Smiley alert the district court of any alleged error in the standard applied. The State does not contest error preservation on Smiley's challenge to the standard applied.[4]

On our review of the record, it is clear the court considered Smiley's motion for a new trial separate from her motion in arrest of judgment. At the hearing on post-trial motions the district court addressed the pending motion in arrest of judgment and motion for new trial:

> As far as the Motion In Arrest of Judgment, by ruling on case law, that cannot be used to challenge the sufficiency of the evidence. The Court having presided at trial does find that the jury's verdict was based on sufficient evidence of possession. They certainly could reach the inferences that they did regarding the location of the items, the recency of their placement and either accept or reject the explanations provided both in argument and testimony. The jury is the appropriate finder of fact for those issues and believed the evidence advanced by the state and that was sufficient evidence for—to support the conviction.
> As far as the new trial, there do not appear to be grounds to grant that, and the request for a new trial is denied as well.

---

[4] The conflict in our cases regarding error preservation remains unresolved, as we have split four to four on this issue. While we will have to wait for a future case or further review to resolve the conflict in our cases, our hope is that practitioners take note of the possibility that this conflict will be resolved in the future by finding error is not preserved under these circumstances and will alert this type of error to the district court's attention. *See State v. Rethwisch*, No. 22-0530, 2023 WL 5607147, at *4–6 (Iowa Ct. App. Aug. 30, 2023).

We conclude the district court did not apply an incorrect standard to the motion for a new trial. Although the district court's ruling on the weight-of-the-evidence challenge was brief, as noted, it is clear from the record that the court considered Smiley's motion for a new trial separate from her motion in arrest of judgment. But we take this opportunity to remind district courts that when ruling on a motion for a new trial, the court should state the reasons for its ruling. Although the court failed to do so here, under this record we believe we can review the district court's ruling on Smiley's motion for a new trial. *See State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008).

A trial court rules on a motion for a new trial by applying a weight-of-the-evidence standard. *Ary*, 877 N.W.2d at 706. This standard gives a trial court wide latitude because the court may make its own witness credibility determinations and balance the evidence supporting alternative verdicts. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). Thus, the deciding court must weigh the evidence and determine "whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." *Ary*, 877 N.W.2d at 706 (quoting *State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998)).

But to avoid the danger of "lessen[ing] the role of the jury as the principal trier of the facts and . . . enabl[ing] the trial court to disregard at will the jury's verdict," trial courts are cautioned "to exercise this discretion carefully and sparingly." *Ellis*, 578 N.W.2d at 659. Accordingly, reviewing courts will "only consider 'whether the district court's determination that the evidence does not preponderate heavily against the verdict was a clear and manifest abuse of

discretion.'" *State v. Neiderbach*, 837 N.W.2d 180, 216 (Iowa 2013) (cleaned up) (quoting *Reeves*, 670 N.W.2d at 203).

Smiley argues the district court abused its discretion by denying her motion. The evidence presented at trial consisted of two photographs of the vape cartridge package, two photographs of the baggie containing the tablets, the crime lab report confirming the tablets contained methamphetamine, and trial testimony from Officer Gerdes, Officer Klein, and Smiley. So, any determination of guilt or innocence relied heavily on testimony evidence, which the court was free to accept or reject based on its own credibility determinations.

Given the descriptions of the state of disarray in Smiley's vehicle, it would be reasonable to believe that Smiley was unaware that a small baggie was mixed within the contents of her center console and a pocket-sized package was stashed between the center console and the front passenger seat. And yet, both items were "easily" within reach, and Smiley was the vehicle's only occupant when Officer Klein discovered the items. So it is also reasonable to believe Smiley knew about the items and tried to hide them when Officer Gerdes initiated the traffic stop.

On Smiley's motion for new trial, the district court determined, "there do not appear to be grounds to grant that, and the request for a new trial is denied." Upon our review, we find no "clear and manifest abuse of discretion," and affirm accordingly. *See Neiderbach*, 837 N.W.2d at 216.

## V. Fine and Surcharge

The district court imposed a fine of $430 plus surcharge for Smiley's possession of cannabis conviction, which Smiley appeals. The State concedes

this issue and agrees that the district court failed to exercise discretion regarding the minimum fine that could be imposed for this conviction.

We review criminal sentences for correction of legal error. *State v. Wilbourn*, 974 N.W.2d 58, 65 (Iowa 2022). "When a sentencing court has discretion, it must exercise that discretion." *State v. Ayers*, 590 N.W.2d 25, 27 (Iowa 1999). Failure to do so is a reversible error and requires a reviewing court to vacate the sentence and remand for resentencing. *Id.*

At sentencing, the State recommended imposition of "the minimum fine of $430 plus fifteen percent surcharge" for both counts. This recommendation misstated the minimum fine for the possession of cannabis conviction, which does not carry any minimum fine for a first offense such as Smiley's. *See* Iowa Code § 124.401(5)(b) (providing the specific penalty for a first-offense possession-of-marijuana[5] conviction, which does not contain a mandatory minimum fine). In contrast, the recommendation properly stated the minimum fine for Smiley's possession of methamphetamine conviction. *See id.* § 903.1(1)(b) (setting the minimum fine of $430 for convictions of serious misdemeanors for which no specific penalty is provided elsewhere). The district court adopted the State's recommended sentences without discussion.

---

[5] As used in Iowa Code § 124.401, "marijuana" means "all parts of the plants of the genus cannabis, whether growing or not; . . . the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols." *Id.* § 124.101(20). So, although Smiley's conviction is for possession of "cannabis," the State properly points out that the distinction is immaterial under the circumstances here.

Nothing in the record indicates the district court was aware it had discretion to impose a fine less than $430 or elect to impose no fine at all. The district court said it was adopting the State's recommendation, which misstated the amount of discretion the court had in how much of a fine, if any, to impose on the cannabis conviction. Under these facts, "we can hardly say [the court] exercised discretion." *Ayers*, 590 N.W.2d at 32. As such, we must vacate the fine on the possession of cannabis conviction and remand for the limited purpose of resentencing on that count.[6] *See id.*

## VI. Conclusion

Because Smiley did not preserve error on her evidentiary challenge, we affirm the district court's reading of the parties' stipulation without reaching the merits of Smiley's challenge. We conclude sufficient evidence exists to support Smiley's convictions and affirm the district court's ruling on the motion for new trial. But as the record does not demonstrate the district court was aware it had discretion to impose a lower fine, we vacate the fine for the possession-of-cannabis conviction and remand for the limited purpose of resentencing on that count.

**CONVICTIONS AFFIRMED; SENTENCE VACATED IN PART AND REMANDED.**

---

[6] Because we are not addressing a carceral sentence, our remand for the limited purposes of resentencing on the possession of cannabis conviction does not conflict with our supreme court's recent opinion in *State v. Duffield*. *See* 16 N.W.3d 298, 303–04 (Iowa 2025) ("Vacating the defendant's sentence and remanding the case for plenary resentencing should be the presumed remedy in cases involving the district court's failure to exercise its discretion in imposing a *carceral* sentence or the district court's failure to articulate its reasons for imposing a *carceral* sentence." (emphasis added)).